No. 47,291

MILTON BOYD, III, *Appellant,* v. YELLOW FREIGHT SYSTEMS, INC., SELF-INSURER, *Appellee.*

(522 P. 2d 395)

Opinion filed May 11, 1974.

*Larry D. Nuss,* of Van Sickle and Nuss, of Fort Scott, argued the cause, and *Walter B. Patterson,* of Fort Scott, was with him on the brief for the appellant.

*A. J. Wachter,* of Keller, Wilbert, Palmer and Lassman, of Pittsburg, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a workmen's compensation proceeding. The examiner found generally for claimant and awarded compensation for temporary total disability for a period of not to exceed 415 weeks. Director's review was not requested and that officer entered pro forma approval of the examiner's award. Upon respondent's

appeal the district court determined that claimant was entitled to compensation for temporary total disability for a limited period only and claimant now appeals to this court.

At the hearing before the examiner the claimant and three medical doctors testified. We summarize that testimony as contained in the record on appeal in the aspect most favorable to respondent on disputed factual issues.

The claimant, Milton Boyd, III, a thirty year old resident of Fort Scott, commenced his employment with respondent Yellow Freight Systems, Inc., in August, 1968. He was a maintenance man in respondent's service department in which capacity he was required to change tires and wash, fuel and generally prepare trucks for their trips. On August 27, 1971, while trying to lift a truck hood which had become stuck, he experienced a sharp pain in his back. Thereafter he consulted a doctor at Pittsburg, who treated and released him to return to work about September 12, 1971. Claimant then consulted respondent's physician, Dr. DeTar of Joplin, Mo., for a time. This doctor released him about September 28, 1971, to return to work. Claimant then worked one full shift but could not perform his duties. Since he felt unable to continue making trips to the company doctor at Joplin because of pain, he consulted Dr. Basham of Fort Scott who treated him over a period of time.

Claimant testified at the hearing before the examiner on March 13, 1972, he still had pain in his low back, that bending and sitting or standing too long aggravated his back pain and caused pain in his legs; he had never before experienced back difficulty; he felt unable to do any work requiring him to bend or lift.

At the instance of claimant's counsel he was twice examined by Dr. Mueller, Joplin, Mo., and at respondent's request was examined by Dr. Overesch of Kansas City, Mo. Both of these doctors specialized in orthopedic surgery.

All three of the doctors who testified found that claimant had a congenital back defect, consisting of a transitional vertebra. This condition was variously described as a fifth lumbar vertebra which resembles the sacral type more than is normally seen with a narrowing of joint space between L-5 and S-1; a vertebra which in its early stage couldn't make up its mind to become a part of the sacrum or a free lumbar vertebra and consqeuently had some aspects

of each; and a vertebra not completely sacralized and yet not completely lumbarized.

Dr. Basham, testifying for claimant, found also that claimant had early arthritis in the sacral joint. He further found muscle spasm in claimant's back. He was of opinion claimant had suffered muscle sprain and that the accidental injury had aggravated his pre-existing arthritic and congenital back conditions. He believed the sprain would be only temporary; however, claimant's unstable back condition rendered him vulnerable to further sprain and return to heavy work would inevitably result in recurrence of disability. He stated that when claimant's muscle strain cleared up there would be no permanent disability caused by the accident of August 21, 1971. Dr. Basham last examined claimant on March 6, 1972.

Dr. Mueller testified on claimant's behalf that he examined claimant twice, on December 15, 1971, and April 12, 1972. On his first examination he found muscle spasm but on the second this condition was gone and the only evidence of injury was claimant's complaints of pain; claimant was much improved and there were no objective symptoms of injury; claimant was largely restored to his pre-accident level of disability, but reaggravation of his congenital back condition was possible if he returned to work.

Dr. Overesch, testifying for respondent, stated he examined claimant November 22, 1971. He did not find true muscle spasm nor any other objective evidence of orthopedic disability attributable to accident. He was of opinion claimant had sustained a sprain but had recovered; claimant had no disability and was able to return to his previous work on November 22, 1971.

The director approved the examiner's award of compensation for temporary total disability on January 8, 1973, and respondent thereafter timely filed its notice of appeal with the director. On February 2, 1973, respondent, a qualified self-insurer, mailed a commercial surety bond to the clerk of the district court pursuant to K. S. A. 44-556 and 44-530. On February 5, 1973, the clerk received from the director copy of respondent's notice of appeal and that official thereupon docketed the appeal and filed respondent's bond previously received. The clerk did not formally approve the bond. Claimant promptly filed a motion to dismiss respondent's appeal for failure of timely filing of proper bond. This motion was denied, the appeal was orally argued and submitted and on March 16, 1973, the trial court directed a letter to counsel for the parties, in pertinent part, as follows:

"1. The Court adopts the Stipulations, Issues and Summary of Evidence contained in the award of Phillip J. Saia, Examiner for the Workmen's Compensation Director of the State of Kansas, of December 26, 1972, as approved by Bryce B. Moore, Workmen's Compensation Director for the State of Kansas on January 8, 1973, and said Stipulations, Issues and Summary of Evidence are incorporated herein and made a part of this order.

"2. In addition, the court finds:

"a. That on August 27, 1971, Claimant met with personal injury by accident, which arose out of and in the course of his employment.

"b. That Claimant's average weekly wage was $189.60.

"c. That as a result of said accidental injury Claimant suffered from a muscle strain which has since that time cleared up; that the Claimant was born with a congenital unstable low back and will have that congenital defect for the remainder of his life; that Claimant was temporarily disabled from performing his labor because of the muscle strain he received by reason of the personal injury on August 27, 1971, but that the period of maximum convalescence has been reached and that the Claimant has sustained no residual disability as a result of the muscle strain.

"d. That Claimant is not entitled to compensation for temporary total disability.

"Therefore, judgment is entered in favor of the Respondent, Self Insurer, and against the Claimant, the costs of the appeal being assessed to the Respondent, Self Insurer, counsel for the Respondent to prepare a formal journal entry in accordance with the above."

On receipt of the foregoing, counsel for respondent called the trial court's attention to the fact its letter contained no date for termination of temporary total disability. The court responded it intended the time of Dr. Mueller's last examination of claimant to be the termination date. Counsel for respondent then prepared a journal entry embodying the language contained in the trial court's March 16, 1973, letter and stating the following:

"6. That claimant was temporarily disabled from performing his labor because of the muscle strain he received by reason of the personal injury on August 27, 1971, but that the period of maximum medical convalescence was reached by the claimant on April 8, 1973.

"7. That the claimant has sustained no residual disability as a result of the accident of August 27, 1971.

"IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that the claimant, Milton Boyd, III, be and is awarded compensation against the respondent and self-insurer, Yellow Freight Systems, Inc., for temporary total compensation at the rate of $56.00 per week from the date of the accident, August 27, 1971, to April 8, 1972, which is a period of 32 weeks and one day for a total of $1,800.00 less compensation previously paid." (Underlining supplied.)

Over claimant's objection the trial court signed and entered the

foregoing journal entry on March 27, 1973. Thereafter it was noticed this instrument contained two errors in that the date of Dr. Mueller's last examination was April 12, 1972, instead of April 8, 1973, as stated in finding No. 6. Respondent filed a motion for *nunc pro tunc* order correcting the date of termination of temporary disability which the trial court, again over claimant's objection, allowed.

Claimant raises both procedural and substantive issues upon appeal. He first asserts respondent's appeal from the director to the district court should have been dismissed because its bond was not filed with the clerk of that court within twenty days from the date of the director's award and because the clerk failed to approve the bond. It should first be noted that the condition of the bond filed by a self-insurer under K. S. A. 44-556 is to stay payment of compensation until the appeal has been decided by the district court.

Claimant's contention is the filing of bond is jurisdictional to perfection of the appeal and he cites certain language to that effect in *Griffith v. State Highway Commission of Kansas,* 203 Kan. 672, 456 P. 2d 21. However, in *Kissick v. Salina Manufacturing Co., Inc.,* 204 Kan. 849, 466 P. 2d 344, we pointed out that the language in *Griffith* cited and relied on by claimant here was dicta and it was specifically disapproved. In *Kissick* we quoted approvingly from *Scammahorn v. Gibraltar Savings & Loan Assn.,* 197 Kan. 410, 416 P. 2d 771, as follows:

" 'We hold, therefore, that all that is required of a party perfecting an appeal to the district court is the filing of his written notice of appeal with the director within the time prescribed. Furthermore, compliance with the 1961 amendments to the statute [K. S. A. 1969 Supp. 44-556] is not a jurisdictional requirement to the perfection of an appeal by an employer. . . . (p. 413.)' " (p. 855.)

Included in the 1961 amendments, referred to in the foregoing quotation, was the provision for the filing of a bond by a self-insurer (Laws, 1961, Ch. 243, § 5).

We held in *Kissick* that failure on the part of an employer to make payment of the compensation required by 44-556 pending an appeal from the director's award is not a jurisdictional prerequisite to the perfection and maintenance of an appeal, nor does it furnish valid grounds for dismissal of the appeal. (syl. ¶ 4). It follows that failure on the part of an employer self-insurer to

file a bond for payment of compensation pending such an appeal is not a jurisdictional prerequisite to the perfection and maintenance of the appeal. Moreover, here a bond in sufficient amount to cover the award made by the director was actually filed upon the same day the appeal was docketed in the district court.

That which has been said disposes of claimant's further contention that respondent's appeal should have been dismissed for failure of the court clerk to approve the bond which was filed. Beyond this, were such approval requisite to the validity of a bond the statute prescribes no particular form it should take and acceptance and filing of a bond by the custodial official certainly raises an implication of approval by that officer (see 72 CJS, Principal and Surety, § 57 b.). The trial court properly denied claimant's motion to dismiss the appeal.

Claimant next contends the trial court had no authority to alter or amend the judgment reflected in its March 16, 1973, letter by the execution of its formal journal entry signed and filed March 27, 1973. He argues the trial court in its letter adopted the director's award of compensation for temporary total disability and claimant is entitled to that award. It should first be noted the trial court did not adopt the director's award of compensation. It merely adopted the statement of stipulations, issues and summary of evidence as contained in the examiner's award. For his position of want of authority claimant cites and relies on *Norcross v. Pickrell Drilling Co.*, 202 Kan. 524, 449 P. 2d 569. There a judgment awarding compensation was formally made and entered. Subsequently an effort was made under the guise of *nunc pro tunc* to change the period of time for which compensation was to be paid. This court held that an order *nunc pro tunc* cannot be used to alter a judgment actually rendered and further stated:

"An award which has been formally made and entered by the district court in a workmen's compensation case may not thereafter be modified by such court, such judgment being final subject only to such modification as may be made by the director under section 44-528 or by this court upon appeal under K. S. A. 44-556. . . ." (Syl. ¶ 2.)

In the case at bar the trial court stated its general conclusions in its March 16, 1973, letter. This letter was never intended to, nor did it, constitute a formal journal entry of judgment—counsel for respondent was specifically directed to prepare such an instrument. Later it was noticed the court had failed to indicate the date claimant reached the period of "maximum convalescence", a term

which when taken in context with the other language used obviously referred to the termination date of claimant's temporary total disability. The trial court supplied that date and formal judgment was entered and filed March 27, 1973. This action was in accord with K. S. A. 60-258 (*b*) which provides:

". . . If the judge directs that the form of the judgment is to be settled by a journal entry or other document, it shall be prepared in accordance with the directions of the judge who shall then sign the same and cause it to be filed with the clerk. Such filing shall constitute the entry of the judgment, and it shall not be effective before such filing. . . ."

Insertion of the date of termination of temporary total disability did not alter a judgment previously entered as in *Norcross*.

The next action taken was to correct the typographical error of April 8, 1973, contained in the formal journal entry. The record clearly reveals the date intended was April 12, 1972, the date of Dr. Mueller's last examination of claimant. In *Tafarella v. Hand*, 185 Kan. 613, 347 P. 2d 356, this court stated [citations omitted]:

"A judgment is one thing. The record of a judgment is a different thing, and what purports to be a record of a judgment may or may not be correct. If not correct, the settled rule is that the trial court not only has the right but is under a duty to make the judgment rolls speak the truth. Such a right is inherent in the court and is not dependent for its existence upon any statute. No act of the parties, such as approval of an incorrect journal entry, can prevent the court from making such a correction nor is such power lost by the lapse of time. Hence such correction can be made at any time, notwithstanding the expiration of the term. This power can be exercised on the court's own motion, and it is therefore immaterial how the defect is brought to the court's attention. The correction may be made upon any satisfactory evidence and it is sufficient if it be based upon the personal knowledge and recollection of the judge." (pp. 617-618.)

The correction here was properly made by *nunc pro tunc* order upon discovery of the error.

Claimant's remaining contentions of error essentially challenge the sufficiency of the evidence to sustain the trial court's findings and award. Although claimant asserts otherwise, the medical testimony as to his disability was disputed.

The existence, extent and duration of an injured workman's incapacity is a question of fact for the trial court to determine (*Howerton v. Goodyear Tire & Rubber Co.*, 191 Kan. 449, 381 P. 2d 365). In *Jones v. City of Dodge City*, 194 Kan. 777, 402 P. 2d 108, this general rule is stated:

"Under K. S. A. 44-556, the appellate jurisdiction of this court in workmen's compensation cases is limited to reviewing questions of law only. Whether the district court's judgment in a compensation case is supported by substantial competent evidence is a question of law as distinguished from a question of fact. [Citations] In reviewing the record to determine whether it contains substantial evidence to support the district court's factual findings, this court is required to review all of the evidence in the light most favorable to the prevailing party below. Where the findings of fact made by the district court are based on substantial evidence, they are conclusive, and we have no power to weigh the evidence and revise those findings or reverse the final order of the court. Although this court may feel the weight of the evidence, as a whole, is against the findings of fact so made, it may not disturb those findings if they are supported by substantial competent evidence." (pp. 778-779.)

Despite his congenital back defect claimant here had worked for respondent three years without mishap. Before that he had for a period of years been engaged in heavy labor for other employers and had had no back trouble. Under all the testimony the fact finder actually had three choices: It could accept the testimony of claimant and Dr. Basham (not all of which has been stated) and enter a continuing award for total disability; it could accept that of Dr. Overesch and find that claimant could have returned to work November 22, 1971; or it could accept the opinion of Dr. Mueller that there was no disability as of April 12, 1972. It chose the latter and that determines the issue.

The judgment is affirmed.

APPROVED BY THE COURT.